IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-99-D

PCS PHOSPHATE COMPANY, INC., )
)
                Plaintiff, )
)
v. ) **ORDER**
)
AMERICAN HOME ASSURANCE )
COMPANY, )
)
                Defendant. )

On February 20, 2014, PCS Phosphate Company, Inc. ("PCS"), filed a complaint against American Home Assurance Company ("American Home") [D.E. 1]. PCS seeks a declaratory judgment that American Home owes PCS a duty to defend and a duty to indemnify in two underlying actions concerning alleged environmental contamination. See PCS Compl. [D.E. 1] ¶¶ 26–32.

On November 14, 2014, American Home filed a third-party complaint against Zurich American Insurance Company ("Zurich American") and Federal Insurance Company ("Federal"). In the third-party complaint, American Home seeks a declaratory judgment that Zurich American and Federal owe PCS a duty to defend and a duty to indemnify, indemnification for American Home's costs in defending PCS, or, alternatively, contribution to the costs of defending and indemnifying PCS. See AHAC Compl. [D.E. 31]. On January 14, 2015, Federal moved to dismiss American Home's third-party complaint for failure to state a claim [D.E. 46] and filed a supporting memorandum of law [D.E. 47]. On February 9, 2015, American Home responded in opposition to Federal's motion to dismiss [D.E. 55]. On February 23, 2015, Federal replied [D.E. 57]. As explained below, the court grants in part and denies in part Federal's motion to dismiss the third-party complaint.

I.

From 1965 to 2006, Ward Transformer Company, Inc., and Ward Transformer Sales and Service, Inc. (collectively "Ward"), built, repaired, reconditioned, and sold transformers in Raleigh, North Carolina. PCS Compl. [D.E. 1] ¶ 1. During these activities, polychlorinated biphenyls ("PCBs") were released into the environment on and around the Ward facility ("Ward Site"). Id. ¶ 2. Between 1978 and 2002, PCS and its local predecessor, Texasgulf, Inc. ("Texasgulf"), sent transformers to Ward for repair and refurbishment. Id. ¶ 3. During the transformer repairs, PCBs were released into the environment. Id. ¶ 4.

In April 2003, the Environmental Protection Agency ("EPA") began a remedial investigation of the Ward Site. Id. ¶ 5. In September 2005, the EPA entered into a settlement agreement with Consolidation Coal Company ("Consol") and Carolina Power & Light Company ("CP&L") to provide for the removal of contamination at the Ward Site and to reimburse the EPA for its costs. Id. ¶ 6. On April 18, 2008, PCS notified American Home that PCS had been identified as a potentially responsible party for the Ward Site contamination, and demanded that American Home defend and indemnify PCS in connection with any resulting lawsuits. See id. ¶ 7. On April 30, 2009, Consol and CP&L each filed an action against PCS seeking contribution for past and future costs associated with the settlement agreement. Id. ¶¶ 8, 10. On July 15, 2009, PCS notified American Home of the two lawsuits and reiterated its demand for defense and indemnification. Id. ¶ 13. Subject to a reservation of rights, American Home accepted the defense of PCS in the Consol and CP&L actions. See AHAC Compl. [D.E. 31] ¶ 10.

Federal issued a Commercial General Liability policy to Texasgulf with an effective date of April 30, 1985, to April 30, 1986. Id. ¶ 18. PCS is an insured under the policy. Id. ¶ 19. In its third-party complaint, American Home seeks a declaratory judgment that, under this policy, Federal owes PCS a duty to defend and a duty to indemnify in the Consol and CP&L actions,

2

indemnification for American Home's costs, or, alternatively, contribution of defense and indemnification costs. Id. ¶¶ 24–41.

On January 14, 2015, Federal moved to dismiss American Home's third-party complaint pursuant to Rule 12(b)(6). Mot. Dismiss [D.E. 46]; see Fed. R. Civ. P. 12(b)(6). Federal asserts that a pollution exclusion in its insurance policy precludes any duty to defend or indemnify PCS in the Consol and CP&L actions and, consequently, precludes any need to indemnify American Home or to contribute to PCS's defense. Mem. Supp. Mot. Dismiss [D.E. 47] 7.

II.

A motion to dismiss under Rule 12(b)(6) tests the legal and factual sufficiency of a complaint. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). The court need not accept a complaint's conclusions of law. See Iqbal, 556 U.S. at 678–79; Twombly, 550 U.S. at 555; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009). As for a complaint's factual sufficiency, a party must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "[N]aked assertions of wrongdoing" cannot "cross the line between possibility and plausibility of entitlement to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quotation omitted); see Vitol, S.A., 708 F.3d at 543. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. A plaintiff armed with nothing more than "labels and conclusions" or a formulaic recitation of the elements of a cause of action cannot proceed. Twombly, 550 U.S. at 555 & n.3; Vitol, S.A., 708 F.3d at 543; Francis, 588 F.3d at 193. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

3

When ruling on a Rule 12(b)(6) motion, a court may also consider documents incorporated into the complaint or attached to a motion to dismiss, so long as the attached documents are integral to the complaint and authentic. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999). A court also may take judicial notice of public records, such as court documents. See, e.g., Tellabs, 551 U.S. at 322; Philips, 572 F.3d at 180. Here, American Home's complaint expressly incorporates PCS's complaint, the complaints of Consol and CP&L in the underlying actions, and the Federal insurance policy. Moreover, the parties have attached these documents to their submissions, and there is no dispute as to their authenticity. See, e.g., AHAC Compl. [D.E. 31] ¶¶ 8, 18; CP&L Compl. [D.E. 55-1]; Consol Compl. [D.E. 55-2]; [D.E. 46-1]. Thus, the court may consider them in ruling on Federal's motion to dismiss.

A federal court sitting in diversity applies the choice of law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 807 (4th Cir. 2013); Fed. Ins. Co. v. S. Lithoplate, Inc., 7 F. Supp. 3d 579, 583 (E.D.N.C. 2014). Under North Carolina law, the "substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). Here, Federal has shown, and American Home does not dispute, that delivery of the Federal policy occurred in Connecticut. See Mem. Supp. Mot. Dismiss 6; [D.E. 46-1] 1. Thus, Connecticut law controls the interpretation of the Federal insurance contract.

### III.

#### A.

American Home's first claim is for a declaratory judgment concerning Federal's obligations in the underlying CP&L and Consol actions. AHAC Compl. [D.E. 31] ¶ 25. Under Connecticut law, "the duty to defend is broader than the duty to indemnify." Travelers Cas. & Sur. Co. of Am. v.

4

Neth. Ins. Co., 312 Conn. 714, 739, 95 A.3d 1031, 1049 (2014) (quotation omitted). "An insurer's duty to defend is triggered if at least one allegation of the complaint falls even possibly within the coverage." Id. at 739, 95 A.3d at 1049 (quotation omitted); see Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co., 274 Conn. 457, 463, 876 A.2d 1139, 1144 (2005) ("If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." (quotation omitted)). The duty to defend arises "even though facts outside the four corners of [the] pleadings indicate that the claim may be meritless or not covered." Neth. Ins. Co., 312 Conn. at 739, 95 A.3d at 1049 (quotation omitted). The underlying complaint need not "specify the connection between the stated cause of action and the policy coverage." Misiti, LLC v. Travelers Prop. Cas. Co. of Am., 308 Conn. 146, 156, 61 A.3d 485, 491 (2013) (quotation omitted). In interpreting an insurance contract, the court must construe the contract "to effectuate the intent of the parties as expressed by their words and purposes. . . . [U]nambiguous terms are to be given their plain and ordinary meaning." Neth. Ins. Co., 312 Conn. at 740, 95 A.3d at 1049–50 (quotation omitted) (alterations in original); see Heyman Assocs. No. 1. v. Ins. Co. of Pa., 231 Conn. 756, 769–71, 653 A.2d 122, 130 (1995).

Federal contends that its insurance policy contains a pollution exclusion and that the Consol and CP&L actions against PCS fall into this exclusion. Thus, Federal contends that it has no duty to defend or indemnify PCS. See Mem. Supp. Mot. Dismiss 7.

Federal's insurance policy states, in the "exclusions" section under the heading of "Pollution," that "[t]his insurance does not apply to . . . bodily injury or property damage arising out of the discharge, dispersal, release or escape of: . . . toxic chemicals or liquids; or . . . gases, waste materials or other irritants, contaminants or pollutants, into or upon land, the atmosphere or any watercourse or body of water." [D.E. 46-1] 7. The pollution exclusion itself contains an exception that states that "this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental." Id. In other words, if the release of contaminants or pollutants is sudden and

5

accidental, the pollution exclusion does not apply and Federal would have a duty to defend and (potentially) a duty to indemnify PCS. To be sudden, the release must "occur in a rapid or otherwise abrupt manner. The release of pollutants over an extended period of time cannot qualify as 'sudden' for purposes of the exception to the pollution exclusion." Buell Indus. v. Greater N.Y. Mut. Ins. Co., 259 Conn. 527, 549, 791 A.2d 489, 503 (2002).

When there is an exclusion, the insurer initially must establish "that the underlying complaint alleges damages attributable to the discharge or release of a pollutant into the environment." Id. at 552, 791 A.2d at 505 (quotation omitted). If the insurer meets that burden, the burden shifts to the insured to "demonstrate a reasonable interpretation of the underlying complaint potentially bringing the claims within the sudden and accidental discharge exception to exclusion of pollution coverage." Id. at 552, 791 A.2d at 505 (quotation omitted). If the insured fails to meet that burden, the court may dismiss the claim under Rule 12(b)(6). See, e.g., Stamford Wallpaper Co. v. TIG Ins., 138 F.3d 75, 79–81 (2d Cir. 1998).

Federal has met its burden to establish that the complained-of conduct in both underlying actions relates to the release of PCBs, a contaminant, into the environment at the Ward Site. See, e.g., CP&L Compl. [D.E. 55-1] ¶¶ 10–13, 24–25, 59(106.); Consol Compl. [D.E. 55-2] ¶¶ 9, 169–71, 179–80. Thus, the burden shifts to American Home to show that the underlying complaints plausibly allege facts that bring the claims within the sudden and accidental discharge exception.

The CP&L complaint alleges that the work at the Ward Site "often required the removal or replacement of the oil in the transformers and the disposal of such oil. This work also often resulted in the spillage of this oil on the Site and resulted in the release of oil or hazardous substances into the environment at the Site." CP&L Compl. [D.E. 55-1] ¶ 10. This oil "often contained hazardous substances, including, but not limited to," PCBs. Id. ¶ 8. The CP&L complaint also alleges, with specific reference to PCS, that "many of the transformers were leaking when they arrived at the Ward Facility, which also resulted in the release or discharge of oil at the Site. For example, notes on the

6

repair documents for one transformer indicate that 'it faulted and blew oil out of the unit' . . . ." Id. ¶ 59(106.). Unlike the gradual oil leakage from shipped or stored transformers, the allegation that a transformer "faulted and blew oil out" possibly falls within the sudden and accidental discharge exception. See Buell, 259 Conn. at 549, 791 A.2d at 503. As Federal notes, the CP&L allegations concerning PCS make no reference to when the transformer faulted and blew out the allegedly contaminated oil. CP&L Compl. [D.E. 55-1] ¶ 59(106.). Connecticut law imposes a duty to defend, however, if "the allegations contained within an underlying complaint fall even possibly within the coverage and therefore, even possibly outside of the relevant insurance policy exclusions." Vt. Mut. Ins. Co. v. Ciccone, 900 F. Supp. 2d 249, 259 (D. Conn. 2012) (quotation omitted) (emphasis added); see Neth. Ins. Co., 312 Conn. at 739, 95 A.3d at 1049; Capstone Bldg. Corp. v. Am. Motorists Ins. Co., 308 Conn. 760, 805, 67 A.3d 961, 992 (2013); Moore v. Cont'l Cas. Co., 252 Conn. 405, 409, 746 A.2d 1252, 1254 (2000). The allegation in the CP&L complaint possibly occurred during the time when Federal insured PCS and falls outside the pollution exclusion, and is therefore covered. Thus, the court denies Federal's motion to dismiss American Home's claim for declaratory judgment with respect to the CP&L action.

The Consol complaint presents a more difficult question. As American Home concedes, the Consol complaint makes no allegation of a sudden and accidental discharge of PCBs at the Ward Site. See AHAC Mem. Opp'n Mot. Dismiss [D.E. 55] 10. American Home argues that, despite the lack of allegations of sudden and accidental discharges in the Consol complaint, Federal's motion to dismiss should be denied because (1) the court must look to extrinsic evidence to determine the existence of a duty to defend, and (2) extrinsic evidence, in the form of the CP&L complaint, shows that there are allegations of a sudden and accidental discharge. Thus, according to American Home, the pollution exclusion does not apply in the Consol action. Id. 10–11. American Home also suggests that if Federal has information outside the pleadings indicating that a sudden and accidental discharge occurred, it must defend the underlying action. See Ciccone, 900 F. Supp. 2d at 268

7

(noting that a duty to defend arises "when the allegations of a complaint indicate a lack of coverage, but the insurer possesses extrinsic information, obtained through its own investigation, that the claims are in fact covered" (quotation omitted)); Litchfield, 274 Conn. at 466–67, 876 A.2d at 1145–46 (noting that an insurer may not avoid a duty to defend, despite pleadings that fail to invoke insurance coverage, where the insurer "has sufficient knowledge to show that a claim falls within coverage" (quotation omitted)).

As for American Home's argument that the court must look to extrinsic evidence to determine the existence of a duty to defend, the cases on which American Home relies involved motions for summary judgment and not motions to dismiss. See, e.g., Ciccone, 900 F. Supp. 2d at 253–54; Buell, 259 Conn. at 552–53, 791 A.2d at 505. Here, however, the court is analyzing a motion to dismiss, and the extrinsic "evidence" that American Home cites is the unsworn CP&L complaint, which is incorporated into the complaint and may be referenced by court without converting the motion to dismiss into a motion for summary judgment. Tellabs, 551 U.S. at 322. Assuming arguendo that the court may, on a motion to dismiss related to the Consol action, consider the unsworn CP&L complaint, the unsworn CP&L complaint is not "evidence" that a sudden and accidental discharge occurred that invokes Federal's duty to defend PCS in the Consol action. Rather, the unsworn CP&L complaint contains allegations made against Federal in a separate action. Where the Consol complaint contains no allegations that would invoke a duty to defend, American Home cannot use unsworn allegations contained in a different case as extrinsic "evidence" that a sudden and accidental discharge of PCBs took place involving Consol. Cf. Neth. Ins. Co., 312 Conn. at 739, 95 A.3d at 1049 (noting that a court looks to the complaint in the underlying action to determine whether a duty to defend exists); Misiti, 308 Conn. at 155, 61 A.3d at 491 (same). In Buell, the Connecticut Supreme Court considered "extensive documentation," including records from meetings, before concluding that there was no duty to defend. Buell, 259 Conn. at 552–56, 791 A.2d at 505–07. In Litchfield, the insurer had "multiple sources of information," including the

8

policy applications, that a person was an insured employee of the insured and that, consequently, there was a duty to defend the employer for the employee's actions. Litchfield, 274 Conn. at 467–68, 876 A.2d at 1146. American Home presents no such evidence here. Furthermore, American Home cites no case in which allegations in an unsworn complaint from a different action, as opposed to documents in the record of the underlying action, suffice as evidence invoking a duty to defend. There is no evidence that Federal has knowledge of facts beyond the unsworn CP&L complaint that would invoke a duty to defend. This court predicts that the Supreme Court of Connecticut would not find a duty to defend on these facts. Cf. Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005) (sitting in diversity and applying state law, a federal court must predict how the state's highest court would rule if faced with the legal issue). Thus, the court grants Federal's motion to dismiss the third-party complaint with respect to the Consol action and dismisses without prejudice the claim for declaratory judgment.

In opposition to this conclusion, American Home argues that "Federal's Motion to Dismiss must . . . be converted into a Rule 56 motion for summary judgment" because the court should afford American Home the "opportunity to investigate and present the extrinsic evidence necessary to establish that the 'sudden and accidental' exception applies." AHAC Mem. Opp'n Mot. Dismiss 11. American Home cites no law for the theory that the court should deny a motion to dismiss so that a plaintiff may pursue discovery when the complaint fails to state a claim. The law is to the contrary. Iqbal, 556 U.S. at 678–79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

The duty to indemnify is narrower than the duty to defend and it "depends upon the facts established at trial and the theory under which judgment is actually entered in the case." Neth. Ins. Co., 312 Conn. at 739, 95 A.3d at 1049 (quotation omitted). Here, there has been no final adjudication of the underlying actions. See AHAC Compl. [D.E. 31] ¶¶ 8–9, 21. Where the claim for indemnification depends on facts not yet proven, the court may dismiss the claim as unripe. S.

9

Lithoplate, 7 F. Supp. 3d at 589–90. Given that American Home's claim for declaratory judgment as to Federal's duty to defend the CP&L action remains pending, the court denies the motion to dismiss the claim for indemnification with respect to the CP&L action and grants the motion to dismiss, without prejudice, with respect to the Consol action.

In sum, the court denies Federal's motion to dismiss American Home's claim for declaratory judgment with respect to the CP&L action and grants Federal's motion to dismiss with respect to the Consol action.

B.

In American Home's second claim, it seeks an order that Federal must indemnify American Home for "costs incurred for the defense of and indemnity for PCS." AHAC Compl. [D.E. 31] ¶ 36. As discussed, the court denies the motion to dismiss the claim for indemnification with respect to the CP&L action and grants the motion to dismiss, without prejudice, with respect to the Consol action.

C.

In American Home's third claim, it seeks an order, in the alternative, that Federal owes contribution of defense and indemnity costs to American Home for costs incurred in the underlying actions. AHAC Compl. [D.E. 31] ¶¶ 40–41. "The right of action for contribution . . . arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum." Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co., 264 Conn. 688, 714, 826 A.2d 107, 123 (2003) (quotation omitted). American Home has plausibly alleged that Federal may be obliged to contribute to PCS's defense and indemnification under the CP&L action. Thus, the court denies the motion to dismiss this claim with respect to the CP&L action and grants the motion to dismiss, without prejudice, with respect to the Consol action.

IV.

In sum, the court GRANTS IN PART AND DENIES IN PART Federal's motion to dismiss [D.E. 46]. The court DISMISSES without prejudice American Home's claims with respect to the underlying Consol action and ALLOWS American Home to amend its complaint pursuant to Rule 15(a)(2). American Home must file any amended complaint not later then July 15, 2015. The court PERMITS American Home's claims with respect to the CP&L action to proceed.

SO ORDERED. This 15 day of June 2015.

JAMES C. DEVER III
Chief United States District Judge

11