IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:14-CV-99-D

| | |
|---|---|
| PCS PHOSPHATE COMPANY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| AMERICAN HOME ASSURANCE COMPANY, | ) |
| | ) ORDER |
| Defendant/Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ZURICH AMERICAN INSURANCE COMPANY and FEDERAL INSURANCE COMPANY, | ) |
| | ) |
| Third-Party Defendants. | ) |

This matter comes before the court on the motion of Defendant/Third-Party Plaintiff American Home Assurance Company ("American Home") seeking protection from certain discovery requests of Plaintiff PCS Phosphate Company, Inc. ("PCS"). [DE-69]. All briefing is complete and the matter is ripe for adjudication. For the reasons set forth below American Home's motion is denied.

## I. BACKGROUND

From 1965 to 2006, Ward Transformer Company, Inc. and Ward Transformer Sales and Service, Inc. (collectively "Ward"), built, repaired, reconditioned, and sold transformers in Raleigh, North Carolina. Compl. [DE-1]. During these activities, polychlorinated biphenyls ("PCBs") were released into the environment on and around the Ward facility ("Ward Site"). *Id.* ¶ 2. Between 1978 and 2002, PCS and its local predecessor, Texasgulf, Inc. ("Texasgulf"), sent

transformers to Ward for repair and refurbishment. *Id.* ¶ 3. During the transformer repairs, PCBs were released into the environment. *Id.* ¶ 4. In April 2003, the Environmental Protection Agency ("EPA") began a remedial investigation of the Ward Site. *Id.* ¶ 5. In September 2005, the EPA entered into a settlement agreement with Consolidation Coal Company ("Consol") and Carolina Power & Light Company ("CP&L") to provide for the removal of contamination at the Ward Site and to reimburse the EPA for its costs. *Id.* ¶ 6. On April 18, 2008, PCS notified American Home that PCS had been identified as a potentially responsible party for the Ward Site contamination, and demanded that American Home defend and indemnify PCS in connection with any resulting lawsuits. *Id.* ¶ 7. On April 30, 2009, Consol and CP&L each filed an action against PCS seeking contribution for past and future costs associated with the settlement agreement (the "underlying actions"). *Id.* ¶¶ 8, 10. On July 15, 2009, PCS notified American Home of the two lawsuits and reiterated its demand for defense and indemnification. *Id.* ¶ 13. Subject to a reservation of rights, American Home accepted the defense of PCS in the Consol and CP&L actions. Am. Third-Party Compl. [DE-66] ¶ 13.

On February 20, 2014, PCS filed the instant action American Home. [DE-1]. PCS seeks a declaratory judgment that American Home owes PCS a duty to defend and a duty to indemnify in the underlying actions concerning alleged environmental contamination. Compl. [DE-1] ¶¶ 26-32. On November 14, 2014, American Home filed an amended third-party complaint against Zurich American Insurance Company ("Zurich") and Federal Insurance Company ("Federal"). [DE-66]. Federal and Zurich issued Commercial General Liability policies to Texasgulf under which PCS is an insured. *Id.* ¶¶ 15-28. In its third-party complaint, American Home seeks a declaratory judgment that Zurich and Federal owe a duty to defend and a duty to indemnify PCS

2

in the underlying actions, indemnification from Zurich and Federal for American Home's costs in defending PCS, or, alternatively, contribution from Zurich and Federal to the costs of defending and indemnifying PCS. *Id.* [DE-66] ¶¶ 29-46. On August 14, 2015, American Home moved for a protective order from having to respond to certain document requests propounded by PCS. [DE-69].

## II. ANALYSIS

A.  Applicable Standard

The Federal Rules of Civil Procedure enable parties to obtain information by serving requests for discovery on each other, including interrogatories and requests for production of documents. *See generally* Fed. R. Civ. P. 26–37. Rule 26 provides for a broad scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The rules of discovery, including Rule 26, are to be given broad and liberal construction. *Herbert v. Lando*, 441 U.S. 153, 177 (1979); *Nemecek v. Bd. of Governors*, No. 2:98-CV-62-BO, 2000 WL 33672978, at *4 (E.D.N.C. Sept. 27, 2000)(unpublished); *Spell v. McDaniel*, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984) ("Rules 26 through 37 of the Federal Rules have been interpreted liberally to allow maximum discovery.").

While Rule 26 does not define what is deemed relevant for purposes of the rule, relevance has been "broadly construed to encompass 'any possibility' that the information sought may be

3

relevant to the claim or defense of any party.'" *Equal Emp't Opportunity Comm'n v. Sheffield Fin. LLC*, No. 1:06-CV-889, 2007 WL 1726560, at *3 (M.D.N.C. June 13, 2007) (unpublished) (quoting *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 473 (N.D. Tex. 2005)); *see also Mainstreet Collection, Inc. v. Kirkland's, Inc.*, 270 F.R.D. 238, 240 (E.D.N.C. 2010) ("During discovery, relevance is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'") (quoting *Oppenheimer Fund., Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *Carr v. Double T Diner*, 272 F.R.D. 431, 433 (D. Md. 2010) ("The scope of relevancy under discovery rules is broad, such that relevancy encompasses any matter that bears or may bear on any issue that is or may be in the case").

The district court has broad discretion in determining relevance for discovery purposes. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992). However, "[e]ven assuming that [the requested] information is relevant (in the broadest sense), the simple fact that requested information is discoverable . . . does not mean that discovery must be had. On its own initiative or in response to a motion for protective order under Rule 26(c), a district court may limit . . . 'discovery methods otherwise permitted'. . . if it concludes that '(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtainable from some other source that is more convenient, less burdensome, or less expensive . . .'" *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) (quoting Fed. R. Civ. P. 26(b)(2)(C)); *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005). Additionally, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . (A) forbidding the disclosure or discovery; . . . or (D)

4

forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters...." Fed. R. Civ. P. 26(c)(1). The party seeking protection from the court from responding to discovery must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law. *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402-03 (4th Cir. 2003); *see also Jones v. Circle K Stores, Inc.*, 185 F.R.D. 223, 224 (M.D.N.C. 1999) (regarding issuance of a protective order); *Smithfield Bus. Park, LLC v. SLR Int'l Corp.*, No. 5:12-CV-282-F, 2014 WL 3919679, at *2 (E.D.N.C. Aug. 11, 2014) (unpublished).

      B.      Plaintiff's Discovery Requests Subject to Defendant's Motion for a Protective Order.[1]

          1. Documents Related to Reinsurance

Request for Production No. 3 seeks "[a]ll communications with any reinsurer or regulatory agency regarding the Underlying Claim." Pl.'s Mem., Ex. B [DE-74-2] at 11. In its discovery response, American Home objects to providing responsive documents asserting objections of vagueness and ambiguity as to the term "Underlying Claim," relevance, overbreadth, overly burdensome and attorney-client privilege. *Id.* at 11-12. In its motion, American Home argues that the documents sought by PCS are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence because PCS has not alleged American Home is or could become insolvent or that American Home may be unable to satisfy a judgment or settlement in this action under any of its policies. [DE-69] at 8.[2] Referring to the nature of

---

[1] The discovery requests that are the focus of the pending motion are included as an exhibit to Plaintiff's response to Defendant's motion. *See* Def. Am. Home Assurance Co.'s First Suppl. Objs. and Resp. to Pl. PCS Phosphate Co., Inc.'s First Set of Reqs. for Prod. [DE-74-2].

[2] The cited page numbers refer to those assigned by CM/ECF.

5

reinsurance, American Home argues such documents, including communications with reinsurers, are not relevant to determining whether there is coverage under any of American Home's policies. *Id.* at 8-9. Finally, American Home asserts that any discovery of reinsurance information should be limited and subject to the attorney-client privilege and work product doctrine. *Id.* at 9.

This court finds that American Home's interpretation of the scope of discovery is too limited. PCS clarifies in its response that the request is directed to discovering communications with reinsurers rather than the policies themselves. [DE-74] at 8. PCS has alleged in its complaint that it provided American Home with timely notice of its claim arising from the underlying actions, and demanded that American Home provide it with a defense and indemnity, as required by the terms of American Home's policies. Compl. [DE-1] ¶¶ 7, 13, 28. Among its asserted causes of action, PCS alleges American Home has acted in bad faith in breaching its insurance contracts with PCS. *Id.* ¶¶ 41-52. In particular, PCS asserts American Home failed to defend and indemnify it without reasonable basis despite acknowledging that PCS has presented valid claims. *Id.* ¶¶ 47-48. For its part, American Home asserts defenses of condition precedent, timely and adequate notice, and time bar as a limitation of liability in whole or in part. Answer [DE-9] at 13, 21.

"Whether communications between cedents and their reinsurers are discoverable appears to depend on the nature of the issues to which they are alleged to be relevant. *See United States Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 643 (D. Kan. 2007) (quoting *Medmarc Cas. Inc. Co. v. Arrow Int'l*, 2002 WL 1870452, at *3-4 (E.D. Pa. July 29, 2002)(unpublished)). While courts "appear reluctant to allow the discovery of communications between cedents and

6

their reinsurers for the purpose of establishing the proper interpretation of an unambiguous insurance policy," courts have been more willing to allow such discovery for other purposes such as defending against and insurer's effort to deny claims for late notice. *Id.* The claims at issue here go beyond those of policy interpretation. Rather, the timing and content of the communications sought could lead to the discovery of admissible evidence regarding American Home's handling and investigation of PCS's claims and its notice to American Home, bearing on PCS's claim of bad faith. *See id.* at 642 (finding no clear error in ruling of magistrate judge that "such communications could lead to the discovery of admissible evidence relating to the Insurers' affirmative defense of late notice; Bunge's bad faith claims, which relate to the Insurers' handling and investigation of Bunge's insurance claims; the Insurers' assessments of their potential liability or exposure; admissions by the Insurers regarding coverage; and the existence and terms of lost policies."). Accordingly, American Home's motion as to this request is denied.

American Home's discovery response contains only boilerplate assertion of privilege and its motion argument likewise only briefly mentions that production of the requested documents should be limited by the attorney-client and work product privileges. [DE-74-2] at 12; [DE-69] at 9. Furthermore there is no evidence before the court that American Home has served a privilege log as required by Rule 26(b)(5) with respect to this request. However, this court will not deem American Home to have waived privilege with respect to responsive documents at this point. To the extent American Home objects to producing responsive documents on the grounds of the attorney-client privilege or the work product doctrine, it should do so in accordance with the Federal Rules of Civil Procedure. *See Lovett v. Cracker Barrel Old Country Store, Inc.*, No.

7

Case 5:14-cv-00099-D   Document 81   Filed 12/10/15   Page 7 of 15

2:14-CV-CV-34-BO, 2015 WL 4092801, at *3 (E.D.N.C. July 6, 2015) (unpublished) ("Failure to timely serve a privilege log meeting the requirements of Rule 26(b)(5)(A) may be deemed a waiver of the privilege otherwise claimed.") (citing *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 577 (D. Md. 2010).[3]

2.  Documents Related to Reserves

Request for Production No. 4 seeks "[a]ll documents relating to Your evaluation, valuation, or analysis of claims concerning the Underlying Claim, including but not limited to all documents relating to Your reserve for claims concerning the Underlying Claim, the amount of the reserve, the date on which it was set, and the date(s) on which it was changed." [DE-74-2] at 12. American Home objected to this request on the grounds that it is unduly burdensome, vague as to the term "Underlying Claim," and seeks material that is irrelevant, confidential/proprietary and protected by the attorney-client privilege and/or the work product doctrine. [DE-74-2] at 12-13. According to its discovery response, American Home states it will produce responsive relevant, non-privileged, non-proprietary claim documents for the Consol Action, the PEC Action and the USEPA Claim, and that it has in fact produced responsive documents. *Id.* at 13. American Home states that documents that have been withheld on the basis of attorney-client privilege, work product or any proprietary or confidentiality claim have been identified in a log. *Id.* However, American Home persists in its objection to providing any documents related to reserves. *Id.* In its motion, American Home objects to providing responsive documents on the grounds that reserve information may be misinterpreted as an admission of coverage. [DE-69] at

---

[3]PCS and American Home entered into a protective order which contemplates the discovery of materials that may be subject to a privilege or are otherwise confidential or proprietary. [DE-20].

10-11. American Home argues the discovery request is not reasonably calculated to lead to the discovery of admissible evidence because setting reserves does not constitute an admission of liability. *Id.* at 11.

This court finds that the request falls within the scope of permissible discovery based upon the claims asserted in this matter. For example, "[t]he time the reserve was established may well reveal information relevant to the claims made by [the policyholder] against [the insurer], including the nature and scope of [the insurer's] investigation, review, consideration and rejection of [the policyholder's] claim." *Savoy v. Richard A. Carrier Trucking*, 176 F.R.D. 10, 12 (D. Mass. 1997). Moreover, this "information . . . will to some degree demonstrate the thoroughness with which [the insurer] investigated and considered [the policyholder's] claim and thus is relevant to the question of the good or bad faith of [the insurer] in denying the claim." *Id.* (quoting *Atl. Coca-Cola Bottling Co. v. Transamerican Ins. Co.*, 61 F.R.D. 115, 117 (N.D. Ga. 1972)). Finally, "the date and amount of the reserve, as well as any modification of that amount, may well relate to [the insurer's] determination of its potential risk in this matter and, hence, reveal its view on liability." *Id.* The timing and any changes in reserve amounts is relevant here because it is probative of whether American Home engaged in unreasonable delay in making a coverage determination. Because PCS asserted bad faith and breach of contract claims and American Home has asserted a late notice defense, reserve information is relevant and discoverable. *See, e.g., Bunge, Inc.*, 244 F.R.D. 644-45 (holding reserve information subject to production because the measure of reserves and the timing of their establishment could be relevant to the insurers' positions on liability, their investigations and coverage determinations); *Nicholas v. Bituminous Cas. Corp.*, 235 F.R.D. 325, 331 (N.D. W. Va. 2006) (holding loss

reserve information was relevant to bad faith claim); *Imperial Textiles Supplies, Inc. v. Hartford Fire Ins. Co.*, No. 6:09-CV-03103-JMC, 2011 WL 1743751, at *4 (D.S.C. May 5, 2011) (unpublished) (same). Accordingly, American Home's motion as it relates to this request is denied.

3. Underwriting Documents

Request for Production No. 6 seeks "[y]our complete underwriting file concerning the American Home Policies." [DE-74-2] at 15. American Home objected to this request on the grounds of relevance and attorney-client privilege and work product doctrine. *Id.* In its motion, American Home seeks protection from having to respond to this request on the grounds that PCS has not alleged any part of the relevant policies to be ambiguous nor has American Home asserted any defense of ambiguity. [DE-69] at 12. American Home contends further that PCS seeks underwriting documents in an effort to assess policy premium calculation and for the business purposes of negotiating future policies, neither of which is a legitimate purpose for discovery. *Id.*

PCS has alleged controversy over whether American Home must provide a defense and indemnity pursuant to the terms of the polices at issue, provisions of which American Home has asserted as a defense. Compl. [DE-1]; Answer [DE-9]. PCS has alleged not simply a breach of contract action and claims of bad faith, but that American Home misrepresented facts or policy provisions related to coverage. [DE-1]. The court finds the requested documents fall within the broad scope of discovery. *See, e.g., Renfrow v. Redwood Fire & Cas. Ins. Co.*, 288 F.R.D. 514, 517, 521 (D. Nev. 2013) (claims file and underwriting files were relevant to plaintiff's breach of contract and bad faith claims against insurer); *Brown Bear v. Cuna Mut. Grp.*, 266 F.R.D. 310,

10

319 (D. S.D. 2009) (claims file, notes, memos, and documents concerning plaintiff's disability claim relevant to whether insurer acted in bad faith in denying claim). Accordingly, as to this request American Home's motion is denied.

4. Documents Related to Claims Handling Manual and Guidelines

Request for Production No. 9 seeks in relevant part "[a]ll claims manuals, educational materials, and other documents concerning the American Home Policies and claims thereunder, including but not limited to processing, reviewing, investigating, and settling such claims." [DE-74-2] at 17. Request for Production No. 15 seeks in relevant part "[a]ll documents concerning the defense coverage provided by the American Home Policies, including but not limited to, any . . . claims manuals . . . ." *Id.* at 23. American Home objected to these requests on the grounds that they are vague, overly broad, unduly burdensome, and seek irrelevant information as well as information protected by the attorney-client privilege and/or the work product doctrine. *Id.* at 17-18, 23-24. American Home supplemented its response indicating it has no documents constituting educational materials. *Id.* at 18. American Home seeks protection from having to respond to this request on the grounds that PCS has not alleged any part of the relevant policies to be ambiguous nor has American Home asserted any defense of ambiguity. [DE-69] at 13.

North Carolina courts have concluded that a claims manual is discoverable and relevant in cases involving allegations of bad faith or unfair trade practices. *Ohio Cas. Ins. Co. v. Fireman's Ins. Co. of Washington*, No. 5:07-CV-149-D, 2008 WL 413849, at *1 (E.D.N.C. Feb. 13, 2008) (unpublished) (citing *Evans v. United Servs. Automobile Ass'n*, 541 S.E.2d 782, 792 (N.C. App. 2001) (noting that an insurance carrier's procedure manual was relevant to determine whether the carrier complied with its own procedures in denying an insurance claim) & *Vazquez*

11

*v. Allstate Ins. Co.*, 529 S.E.2d 480 (2000) (affirming a judgment for unfair trade practices against an insurance carrier based, in part, on the carrier's failure to follow its own standards)). Because PCS has alleged a claim of bad faith, which involves reviewing a carrier's own procedures for claims investigations, the court concludes that the claims manual is discoverable and relevant to the current action. Accordingly, American Home's motion as it relates to this request is denied.

5. Documents Related to Record Retention Policies

Request for Production No. 12 seeks "[a]ll document retention or destruction policies applicable to the American Home Policies." [DE-74-2] at 21. American Home objected to the request on the grounds that the request is overly broad and seeks irrelevant information. *Id.* In its motion, American Home argues that the requested documents are irrelevant because PCS has not alleged that any of its policies are ambiguous and American Home has not asserted ambiguity as a defense. [DE-69] at 14-15. American Home contends that PCS has not alleged that any policies in the possession custody or control of American Home have been lost or destroyed, thereby making the request irrelevant. *Id.* at 15.

PCS seeks the requested documents to assist in the narrowing and specifying future discovery requests and in avoiding or resolving disputes over what information is in American Home's possession, custody or control. [DE-74] at 10. Document retention polices are generally discoverable. *See Burd v. Ford Motor Co.*, No. 3:13-CV-20976, 2015 WL 4137915, at *9 (S.D. W. Va. July 8, 2015) (unpublished) ("Contrary to Ford's contentions, discovery of document retention and disposition policies is not contingent upon a claim of spoliation or proof of discovery abuses, and may be accomplished through a Rule 30(b)(6) witness."); *Doe v. District*

12

*of Columbia,* 230 F.R.D. 47, 55-56 (D.D.C. 2005) (finding that Rule 26(b)(1) may be construed to allow discovery into document retention and destruction policies by permitting "[p]arties [to] obtain discovery regarding any matter, ... including the existence, description, nature, custody, condition, and location of any ... documents."); *Newman v. Borders*, 257 F.R.D. 1, 3 (D.D.C. 2009) ("That a party's document retention policies, including its policies as to electronically stored information, may be a fit subject of discovery cannot be gainsaid. It is equally clear that a party must produce as its 30(b)(6) designee a person who can speak knowingly as to the topic and, if necessary, educate that designee so that she can do so.")(internal citation omitted); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 1054279, at *4 (D. Kan. Apr. 9, 2007) (unpublished) (stating that the topics of document retention policies and destruction, alteration, or loss of records are relevant and discoverable). "Moreover, broader 'discovery on discovery' may be appropriate and relevant under Rule 26(b) when it aids a party in the presentation of its case." *Burd*, 2015 WL 4137915, at *9 (quoting *Ruiz-Bueno v. Scott*, No. 2:12-CV-0809, 2013 WL 6055402, at *1-2 (S.D. Ohio Nov. 15, 2013) (collecting cases)). Accordingly, American Home's motion as it relates to this request is denied.

6.  Documents Related to Promotional Materials

Request for Production No. 15 seeks in relevant part "[a]ll documents concerning the defense coverage provided by the American Home Policies, including but not limited to, any promotional materials. . . ." [DE-74-2] at 23. American Home objected to this request on the grounds that it is overly broad, unduly burdensome, seeks information that is irrelevant, protected by the attorney-client privilege and/or work product doctrine, or relates to confidential or proprietary information. *Id.* at 23-24. In its motion, American Home argues the requested

13

documents are irrelevant because PCS has not alleged that any of its policies are ambiguous and American Home has not asserted ambiguity as a defense. [DE-69] at 14. PCS focuses its response to American Home's objection to providing promotional materials related to the defense coverage provided by American Home's policies.[4] [DE-74] at 6-7.

PCS argues that to the extent American Home advertised the policies as containing a defense obligation, despite its subsequent denial of such obligation and delay in acknowledging the same, the promotional materials are probative of bad faith. *Id.* at 6. PCS contends that American Home asserted for six years that the policies at issue in this case did not contain a duty to defend, notwithstanding policy language to the contrary. *Id.*; Compl. [DE-1] ¶¶ 13-18. The court finds under the circumstances the promotional materials related to the polices at issue in this case have marginal relevance but are nonetheless within the scope of discovery. *See Cunningham v. Standard Fire Ins. Co.*, No. 07-CV-02538-REB-KLM, 2008 WL 2668301, at *3-4 (D. Colo. July 1, 2008) (unpublished) (finding promotional materials having some marginal relevance to issues of whether Defendants acted unreasonably in adjusting plaintiff's claim despite the absence of any allegations relating to advertising, recognizing that Defendants may have made representations regarding their handling of claims in their advertising, and that such representations may be relevant to Plaintiff's bad faith claim). Accordingly, as it relates to this request American Home's motion is denied.

### III. CONCLUSION

For the reason set forth above, the motion for a protective order [DE-69] is DENIED.

---

[4]Those polices are the comprehensive general liability insurance policies identified in the complaint. *See* Compl. [DE-1] ¶ 24.

14

Case 5:14-cv-00099-D   Document 81   Filed 12/10/15   Page 14 of 15

So ordered, the 10th day of December 2015.

                                          Robert B. Jones, Jr.
                                          United States Magistrate Judge