IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-99-D

PCS PHOSPHATE COMPANY, INC., )
)
Plaintiff, )
)
v. ) **ORDER**
)
AMERICAN HOME ASSURANCE )
COMPANY, )
)
Defendant. )

On February 20, 2014, PCS Phosphate Company, Inc. ("PCS"), filed a complaint against American Home Assurance Company ("American Home") [D.E. 1]. PCS seeks a declaratory judgment that American Home owes PCS a duty to defend and a duty to indemnify in two underlying actions concerning alleged environmental contamination. See PCS Compl. [D.E. 1] ¶¶ 26–32.

On November 14, 2014, American Home filed a third-party complaint against Zurich American Insurance Company ("Zurich American") and Federal Insurance Company ("Federal") [D.E. 31]. American Home seeks a declaratory judgment that Zurich American and Federal owe duties to defend and indemnify PCS in the underlying environmental contamination actions and therefore must either indemnify American Home for its costs in defending PCS or, alternatively, contribute costs of defending and indemnifying PCS. See AHAC Compl. [D.E. 31] 8–9. Zurich American answered the complaint, and Federal moved to dismiss. See [D.E. 56, 46]. On June 15, 2015, this court granted in part and denied in part without prejudice Federal's motion to dismiss. PCS Phosphate Co., Inc. v. Am. Home Assur. Co., No. 5:14-CV-99-D, 2015 WL 3742965 (E.D.N.C. June 15, 2015) (unpublished). On July 20, 2015, American Home filed an amended third-party complaint against both Federal and Zurich American [D.E. 66]. On July 31, 2015, Federal answered [D.E. 67]. On August 26, 2015, Zurich American moved for partial judgment on the pleadings [D.E. 72, 73].

On December 7, 2015, Federal moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). See [D.E. 80, 80-1]. On January 7, 2016, American Home responded in opposition [D.E. 83], and, on January 21, 2016, Federal replied [D.E. 86]. On March 29, 2016, the court granted Zurich American's motion for partial judgment on the pleadings. PCS Phosphate Co., Inc. v. Am. Home Assur. Co., No. 5:14-CV-99-D, 2016 WL 1271031 (E.D.N.C. Mar. 29, 2016) (unpublished). As explained below, the court likewise grants Federal's motion for judgment on the pleadings.

I.

From 1965 to 2006, Ward Transformer Company, Inc., and Ward Transformer Sales and Service, Inc., (collectively "Ward") built, repaired, reconditioned, and sold transformers in Raleigh, North Carolina. PCS Compl. ¶ 1. Between 1978 and 2002, PCS and its local predecessor, Texasgulf, Inc. ("Texasgulf"), sent transformers to Ward for repair and refurbishment. Id. ¶ 3. During the transformer repairs, polychlorinated biphenyls ("PCBs") were released, causing environmental contamination at the Ward facility ("Ward Site"). Id. ¶¶ 2, 4.

The Environmental Protection Agency ("EPA") conducted a remedial investigation of the Ward Site and, in September 2005, entered into a settlement agreement with Consolidation Coal Company ("Consol") and Carolina Power & Light Company ("CP&L") to remove contamination at the Ward Site and to reimburse the EPA for its costs. Id. ¶¶ 5–6. On April 18, 2008, PCS notified American Home that PCS had been identified as a potentially responsible party for the Ward Site contamination and demanded that American Home defend and indemnify PCS in any resulting lawsuits. Id. ¶ 7. On April 30, 2009, Consol and CP&L each filed an action against PCS seeking contribution for past and future costs associated with the settlement agreement. Id. ¶¶ 8, 10. On July 15, 2009, PCS notified American Home of these lawsuits and again demanded defense and indemnification. Id. ¶ 13. Subject to a reservation of rights, American Home agreed to defend PCS in the Consol and CP&L actions. AHAC Am. Compl. [D.E. 66] ¶ 13.

2

Federal issued a commercial general liability policy, No. 35257488 (the "Federal policy"), to PCS predecessor Elf Aquitane, Inc., providing insurance coverage from April 30, 1985, to June 17, 1986. See id. ¶ 22 (listing the coverage termination date as April 30, 1986); Federal Policy [D.E. 46-1] (indicating that coverage may have extended through June 16, 1986);[1] Federal Ans. [D.E. 67] 7 (admitting coverage under the policy through June 17, 1986). PCS is an insured under the policy. AHAC Am. Compl. ¶ 23. In the Federal policy, Federal agreed to pay "damages the insured becomes legally obligated to pay by reason of liability imposed by law ... because of ... property damage caused by an occurrence" and to "defend any suit against the insured seeking such damages." Federal Policy 6. In its amended third-party complaint, American Home seeks a declaratory judgment that the Federal policy obligates Federal to defend and to indemnify PCS in the Consol and CP&L actions and for "liability for cleanup associated with the Ward Site" (collectively, the "underlying actions"). AHAC Am. Compl. ¶¶ 9, 24, 30. American Home also seeks a declaratory judgment that Federal must indemnify American Home for its costs or, alternatively, contribute defense and indemnification costs. Id. ¶¶ 41–46.

On December 7, 2015, Federal moved for judgment on the pleadings pursuant to Rule 12(c). [D.E. 80, 80-1]; see Fed. R. Civ. P. 12(c). Federal argues that the pollution exclusion clause in the Federal policy precludes any duty to defend or indemnify PCS in the underlying actions and, consequently, any duties to indemnify American Home or to contribute to PCS's defense. [D.E. 80] 1–2.

II.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings should be granted if "the moving party has clearly established

---

[1] The Federal policy is located at D.E. 46-1 and was attached to Federal's motion to dismiss the initial complaint against it in this action.

that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogation on other grounds recognized by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002).

A court ruling on a Rule 12(c) motion for judgment on the pleadings applies the same standard as in a Rule 12(b)(6) motion to dismiss. See, e.g., Mayfield, 674 F.3d at 375; Burbach Broad. Co. of Del., 278 F.3d at 405–06. A motion under either rule tests the legal and factual sufficiency of the claim. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(c) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013); Burbach Broad. Co. of Del., 278 F.3d at 406. A court need not accept a pleading's legal conclusions. Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Nor must it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted). Rather, plaintiffs' allegations must "nudge[] their claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausib[ility]." Iqbal, 556 U.S. at 678–79.

When evaluating a Rule 12 motion, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263,

4

268 (4th Cir. 2005); Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may take judicial notice of public records such as court documents. See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). Here, American Home's amended complaint expressly incorporates PCS's complaint [D.E. 1], the complaints of Consol and CP&L in the underlying actions [D.E. 66-1–66-2], and the Federal policy [D.E. 46-1]. The court also considers the Texasgulf business records that American Home attached to the amended complaint as Exhibit 3 [D.E. 66-3]. The parties have attached copies of these documents to their submissions, and there is no dispute as to their authenticity. See AHAC Am. Compl. ¶¶ 8–12, 22, 28. Thus, the court may consider them in ruling on Federal's motion for judgment on the pleadings.

A federal court sitting in diversity applies the choice-of-law rules of the forum state. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); DiFederico v. Marriott Int'l, Inc., 714 F.3d 796, 807 (4th Cir. 2013); Fed. Ins. Co. v. S. Lithoplate, Inc., 7 F. Supp. 3d 579, 583 (E.D.N.C. 2014). Here, American Home seeks declaratory judgment as to Federal's obligations under an insurance contract. See AHAC Am. Compl. ¶¶ 22–28, 38–42, 45–46. Under North Carolina law, the "substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." Fortune Ins. Co. v. Owens, 351 N.C. 424, 428, 526 S.E.2d 463, 466 (2000). The Federal policy was delivered in Connecticut. See Federal Policy 1. Thus, Connecticut law applies. See PCS Phosphate Co., Inc., 2015 WL 3742965, at *3.

### III.

#### A.

The insurance policy obligates Federal to "defend any suit against the insured seeking such damages" that an insured "becomes legally obligated to pay . . . because of . . . property damage caused by an occurrence." Federal Policy 6. American Home contends that the allegations in the underlying actions fall within the policy coverage and therefore Federal owes a duty to defend.

5

AHAC Am. Compl. ¶ 30; see [D.E. 83] 6–15. Federal responds that the Federal policy excludes coverage for pollution. See [D.E. 80-1] 11–19. Specifically, the Federal policy states that it does not cover "bodily injury or property damage arising out of the discharge, dispersal, release or escape of . . . smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals or liquids; or . . . gases, waste materials or other irritants, contaminants or pollutants. . . into or upon land, the atmosphere or any water course or body of water." Federal Policy 7. This exclusion itself contains an exception, however, and the policy provides coverage where "discharge, dispersal, release or escape [of pollutants] is sudden and accidental." Id. Federal contends that the underlying actions against PCS fall into the pollution exclusion but do not fall into its sudden-and-accidental-discharge exception; therefore, according to Federal, it has no duty to defend or indemnify PCS under the policy. See [D.E. 80-1] 11–19.

The Federal policy, pollution exclusion, and sudden-and-accidental-discharge exception are materially indistinguishable from the terms of the Zurich 1981–1986 policies that this court analyzed in its order of March 29, 2016. Compare Federal Policy 6–7, with PCS Phosphate Co., Inc., 2016 WL 1271031, at *2–4. In that March 2016 order, the court discussed applicable Connecticut law at length and evaluated whether Zurich American owed any duty to defend PCS in the same underlying actions alleged in the amended complaint. See PCS Phosphate Co., Inc., 2016 WL 1271031, at *3–7.

As discussed at length in this court's March 2016 order, the underlying actions reasonably construed do not allege a sudden and accidental release of PCBs at the Ward Site. PCS Phosphate Co., Inc., 2016 WL 1271031, at *7; compare [D.E. 83] 14–15 (arguing that several exhibits showed a sudden and accidental release), with PCS Phosphate Co., Inc., 2016 WL 1271031, at *6 & n.5 (analyzing each of these documents and concluding that none alleges a sudden and accidental release at the Ward Site). The same conclusion applies concerning the PRP letter. See PCS Phosphate Co.,

6

Inc., 2016 WL 1271031, at *5 n.3.[2] Therefore, the court predicts that the Supreme Court of Connecticut would not find a duty to defend in this case and holds that Federal has no duty to defend the underlying action. See id. at *6–7; cf. Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005).

B.

In American Home's second claim, it seeks an order that Federal must indemnify American Home for "costs incurred for the defense of and indemnity for PCS." AHAC Am. Compl. ¶¶ 41–42. As discussed, Federal does not owe a duty to defend or indemnify PCS. Accordingly, Federal owes no duty to indemnify American Home for the costs that American Home incurs in defending or indemnifying PCS. Thus, the court grants Federal's motion for judgment on the pleadings concerning both the Consol and CP&L actions.

C.

Alternatively, American Home seeks an order that Federal owes contribution of defense and indemnity costs to American Home for costs incurred in the underlying actions. See id. ¶¶ 45–46. "The right of action for contribution . . . arises when, as between multiple parties jointly bound to pay a sum of money, one party is compelled to pay the entire sum." Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co., 826 A.2d 107, 123 (Conn. 2003) (emphasis in original) (quotation omitted). American Home has not plausibly alleged that the Federal policy obligates Federal to contribute to PCS's defense or indemnification in either of the underlying actions. Thus, the court

---

[2] Federal also argues that the blowout described in the transportation records cannot support American Home's claim because the blowout occurred outside the Federal policy coverage dates. [D.E. 80-1] 12–16; [D.E. 86] 4–6, 8–9. The underlying complaint, however, describes the blowout as an "example" of a transformer that was leaking upon arrival at the Ward Site. Construing the complaint in the light most favorable to American Home, the court can reasonably infer that PCS shipped other leaking transformers to the Ward Site within the coverage dates. Regardless of whether similar transformer shipments to the Ward Site occurred during the policy period, continuous leakage of PCBs from transformers that leaked upon arrival cannot qualify as a sudden and accidental discharge.

7

grants Federal's motion for judgment on the pleadings concerning both the Consol and CP&L actions.

IV.

In sum, the court GRANTS Federal's motion for judgment on the pleadings [D.E. 80]. The court DISMISSES American Home's claims against Federal with respect to the underlying Consol and CP&L actions.

SO ORDERED. This 14 day of April 2016.

JAMES C. DEVER III
Chief United States District Judge